*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY KATHLEEN TRAPP, formerly known as
EMILY KATHLEEN SETTER,

UNPUBLISHED
November 3, 2022

Plaintiff-Appellee,

v

No. 361376
Oakland Circuit Court
Family Division

GERALD ALLEN SETTER, JR.,

LC No. 2016-842870-DM

Defendant-Appellant.

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right an April 22, 2022 amended opinion and order granting plaintiff's motion to change the domicile of the parties' minor children, ZRS and GJS (sometimes referred to collectively as the children), from Clarkston, Michigan, to Traverse City, Michigan. We affirm.

The parties were married in 2011. On December 16, 2016, a consent judgment of divorce was entered. The parties were granted joint legal and physical custody of the children. The parties were afforded equal parenting time beginning in January 2017.

In 2021, plaintiff filed a motion to change the domicile of the children from Clarkston to Traverse City. She was engaged to Michael Ring, who lived and worked in Traverse City. Defendant opposed the motion. A three-day evidentiary hearing was held. By the time of the evidentiary hearing, plaintiff and Ring were married and had purchased a home in Traverse City, although plaintiff was continuing to live in a rented home in Clarkston. Plaintiff had a job offer in Traverse City making more money than she was making at her job in Clarkston. Defendant admitted at the evidentiary hearing that he had discussed the court proceedings and the proposed move with the children. The trial court cautioned the parties not to discuss these matters with the children. The trial court interviewed the children in chambers.

On January 9, 2022, the trial court issued an opinion and order granting plaintiff's motion to change domicile. The court evaluated the change-of-domicile factors set forth in

MCL 722.31(4) and concluded that those factors supported the request for a change of domicile by a preponderance of the evidence. Next, the court found that the children had an established custodial environment with both parties. The court further found that the modified parenting-time order that the court was adopting as a result of the change of domicile would not alter the established custodial environment and that it was thus unnecessary to examine the best-interest factors of MCL 722.23. The court granted defendant extensive in-person parenting time, including on weekends, summer breaks, spring breaks, and school holidays. Defendant was to have regular telephonic and electronic contact with the children, including through Skype, Facetime, text messages, and Google Duo.

On January 28, 2022, defendant filed a motion for reconsideration. He argued that the change of domicile would alter the children's established custodial environment with defendant and that the trial court had thus erred in failing to examine the best-interest factors of MCL 722.23. At a March 2, 2022 hearing on the motion for reconsideration, defendant's counsel admitted that the court's modified or new parenting-time schedule reduced defendant's parenting time by only about 20 to 30 days a year. Also, defendant admitted that he had discussed the January 9, 2022 opinion and order with the children. Defendant apologized to the court for having again discussed the court proceedings with the children, despite the court's previous instruction not to do so.

On March 4, 2022, the trial court entered an order granting defendant's motion for reconsideration. On April 22, 2022, the trial court issued an amended opinion and order granting plaintiff's motion for change of domicile. The trial court found that the change of domicile would alter the established custodial environment, and the court thus evaluated the best-interest factors of MCL 722.23. The court found that the parties were equal on most of the factors. The court found that plaintiff was favored on factor (j) because defendant had inappropriately discussed the proposed move and the court proceedings with the children. The court considered the reasonable preferences of the children under factor (i). The court determined that plaintiff had established by clear and convincing evidence that the change of domicile was in the best interests of the children. The court adopted the same parenting-time schedule set forth in the January 9, 2022 opinion and order. This appeal ensued.

Defendant's first argument on appeal is that the trial court erred in its findings on some of the best-interest factors of MCL 722.23 and in its determination that plaintiff had established by clear and convincing evidence that the proposed move to Traverse City was in the children's best interests. We disagree.

"In a child custody dispute, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. "A trial court's ultimate decision on a motion for change of domicile is reviewed for an abuse of discretion." *Safdar v Aziz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358877), quoting *Rains v Rains,* 301 Mich App 313, 324; 836 NW2d 709 (2013); slip op at 5, lv pending (Docket No. 164665). "In this context, '[a]n abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias.' " *Id*. (quotation marks, and citation omitted).

"The trial court's findings regarding the best-interest factors of MCL 722.23 are . . . reviewed under the great-weight-of-the-evidence standard." *Id*. at 6. The trial court's findings are thus "affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). This Court defers to the trial court's credibility determinations. *Id*.

This Court has explained the process that a trial court must follow when deciding a motion for change of domicile:

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).]

In its April 22, 2022 amended opinion and order, the trial court followed the process set forth in *Rains*. The trial court determined that plaintiff had established by a preponderance of the evidence that the factors of MCL 722.31(4) supported the motion for a change of domicile. The trial court then found that the children had an established custodial environment with both parties. Next, the trial court determined that the change of domicile would modify or alter the established custodial environment. Finally, the trial court evaluated the best-interest factors of MCL 722.23 and determined that plaintiff had established by clear and convincing evidence that the change of domicile was in the children's best interests. The court thus granted the motion for a change of domicile and adopted a new parenting-time schedule.

Defendant's first argument on appeal concerns the fourth *Rains* step. Defendant challenges the trial court's findings on factors (d), (e), and (j) of MCL 722.23 and argues that the trial court erred in determining that plaintiff had established by clear and convincing evidence that the change of domicile was in the children's best interests. Defendant's argument is unavailing.

This Court has explained:

> Under the fourth *Rains* step, '[i]f the trial court concludes that a change in an established custodial environment would occur, then the party requesting the change of domicile must prove by clear and convincing evidence that the change is in the child's best interests.' In determining the child's best interests, the trial court is required to consider the factors set forth in MCL 722.23. The trial court's 'findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the

-3-

trial court's findings.' Again, '[t]his Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors.' [*Safdar*, ___ Mich App at ___; slip op at 10-11 (quotation marks, and citations omitted).]

Defendant's appellate argument regarding factors (d) and (e) is cursory and made only in passing. He fails to provide a distinct argument regarding each of those factors. His entire argument regarding those two factors consists of two sentences asserting that most of the children's family and friends live in Clarkston and that the trial court thus erred in failing to find in favor of defendant on factors (d) and (e). "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citations omitted). Given the cursory nature of defendant's argument regarding factors (d) and (e) as well as his failure to provide a distinct argument regarding each of those factors, his appellate argument regarding factors (d) and (e) has been abandoned on appeal. Defendant also fails to provide a record citation to support his factual assertion that most of the children's family and friends live in Clarkston. Defendant has thereby failed to comply with MCR 7.212(C)(7), which states, in relevant part, "Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." "This Court will not search the record for factual support for a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009) (citation omitted).

In any event, the trial court's findings on factors (d) and (e) were not against the great weight of the evidence. Factor (d) is "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court determined that this factor favored both parties, i.e., that the parties were equal on this factor. The court found that "the children live in a stable and satisfactory environment with both parents" and that, although defendant "works many hours, . . . he has a support system that allows him to continue to meet the children's needs in his care." Defendant argues that this factor should favor only him, but he has provided no basis to question the trial court's finding that the children have lived in a stable, satisfactory environment with both parties. Even accepting as true defendant's assertion that most of the children's family and friends live in Clarkston,[1] this by itself does not require a finding that factor (d) favors only defendant. Under the trial court's new parenting-time schedule, the children will continue to spend a considerable amount of time with defendant in Clarkston. The evidence does not clearly preponderate against the trial court's finding that factor (d) favors both parties.

Factor (e) concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). Factor (e) "exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other." *Ireland v Smith*, 451 Mich 457, 462; 547 NW2d 686 (1996) (quotation marks and citation omitted). The trial court determined that this factor favored both parties, i.e.,

---

[1] It is notable that plaintiff testified that the children are very close to plaintiff's parents, who planned to move to Traverse City if the motion to change domicile was granted.

that the parties were equal on this factor. The court found that "the children have a family unit with" defendant. The court further found that plaintiff "has remarried and purchased a home in Traverse City with her now husband. The [c]ourt finds that the children and [plaintiff] reside in a rented home. The [c]ourt finds that the children are bonded to [plaintiff] in both their current home in Clarkston . . . and in their home in Traverse City." Defendant argues that this factor should favor him alone, but he has provided no basis to conclude that the children will lack an intact family unit with plaintiff. Indeed, the purpose of the move to Traverse City was so that plaintiff, her husband, and the children could live together in one home as an intact family unit. The evidence does not clearly preponderate against the trial court's finding that both parties are favored on this factor.

Factor (j) is "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that this factor favored plaintiff. The court explained:

> This [c]ourt finds that the pendency of this action has deteriorated the continuity of the parties as it relates to the minor children. The testimony indicates that [defendant] inappropriately spoke to the children about this case prior to the evidentiary hearing and inappropriately spoke to the children about this case when the [c]ourt issued its opinion and order on January 9, 2022.

> Prior to this action, the testimony is that the parties [sic] have shared equal time with [plaintiff] and [defendant].

With respect to the court's findings on factor (j), defendant argues that the trial court inappropriately utilized its order changing domicile to punish defendant for communicating with the children about the case. Defendant cites *Bylinski v Bylinski*, 25 Mich App 227, 229; 181 NW2d 283 (1970), in which this Court stated that the trial court "could not order a change of custody as a punishment for contempt." Defendant also cites *Kaiser v Kaiser*, 352 Mich 601, 604; 90 NW2d 861 (1958), which likewise held that a change of custody was not a proper means of punishing a parent for contempt.

*Bylinski* and *Kaiser* are inapplicable here. The trial court did not order a change of domicile as a means of punishing defendant for contempt or for his actions in speaking with the children about the case. Rather, the court properly considered defendant's inappropriate communications with the children in the context of determining what was in the best interests of the children. Specifically, as will be explained, the trial court reasonably considered defendant's inappropriate communications with the children in the context of factor (j) of MCL 722.23.

Defendant admitted that he discussed the case with the children multiple times. Defendant testified that ZRS initially said that she wanted to move to Traverse City, but her opinion had

changed.[2]  When asked if the reason for ZRS's change of opinion was because defendant said that he did not want them to move, defendant responded: "I don't know if that had an influence.  I have specifically, or not—I, I have just mentioned, you know, what each side would entail, uh, but not to tell them you must stay with me or anything of that nature."  Defendant elaborated:

> I, I explained that if they were to move to Traverse City they would go to school up there and most likely see me on holidays and the summertime.  And if they stayed here and [plaintiff] still chose to move that they would see her on holidays and summertime most likely and be in Clarkston for schooling.  Just to explain that it's, the dynamic differences.

Defendant testified further that ZRS initially said it was fun and like a vacation when she goes to Traverse City.  But she later said that she did not want to leave her friends in Clarkston and that she understood the difficulty of maintaining a relationship with either defendant or plaintiff if ZRS did not see either of them for a long period of time.  Defendant testified that he has never told the children what to say with respect to this proposed move.  However, he admitted that he has "told them that I believe it would be best for them to, to stay how it is right now, that that would be the, the ideal situation."

Even after the trial court cautioned the parties not to discuss the case with the children, defendant discussed the trial court's January 9, 2022 opinion with the children.  At the March 2, 2022 hearing on defendant's motion for reconsideration, the trial court placed defendant under oath and asked if he had read the trial court's January 9, 2022 opinion and order to the children or spoken to them about what was contained in the opinion and order.  Defendant denied reading the entire opinion and order to the children but admitted that he told the children "small pieces" and "a quick two second synopsis" of the opinion and order.  The trial court told defendant that it was "very inappropriate" for him to have communicated with the children about the court's opinion and order.  Defendant apologized to the court.  The court stated that such inappropriate communication placed additional stress on the children and that the court had previously instructed the parties not to do that after prior instances of such improper communications.  The court continued:

> So that was the wrong thing to do and it's something that you can apologize for now but even at the time that you did it you knew that it was putting the kids in an awkward position and you were thinking about yourself, not your kids.  So the court is disappointed, all right?

Defendant's communications with the children supported the trial court's determination that plaintiff was favored on factor (j).  Defendant's statements to the children could reasonably be viewed as attempts to influence the children's views regarding the proposed move to Traverse City and as undermining the children's relationship with plaintiff.  The evidence did not clearly

---

[2] Plaintiff testified that she believes that the children want to move to Traverse City.  Plaintiff stated that she did not discuss the proposed move with the children until after defendant did so first.  According to plaintiff, ZRS brought the subject up with plaintiff and said that she wanted to move to Traverse City, and ZRS had not changed her mind about it.

preponderate against the trial court's finding on factor (j). Again, there is no basis to conclude that the trial court ordered the change of domicile as a means to punish defendant. Rather, the court considered defendant's improper communications with the children in the context of evaluating what was in the best interests of the children.

Defendant argues that plaintiff also spoke with the children about the court proceedings. However, plaintiff testified that she did not discuss the proposed move with the children until after defendant did so first. According to plaintiff, ZRS brought the subject up with plaintiff. When asked if she had told the children what is going on with the court case, plaintiff testified that defendant "chose to tell them." Moreover, defendant testified that he did not know which party first discussed the proposed move with the children. Again, this Court defers to the trial court's credibility determinations. *Safdar*, ___ Mich App at ___; slip op at 11. Moreover, there is no evidence that plaintiff discussed the January 9, 2022 opinion and order with the children, like defendant did after the trial court cautioned the parties against discussing the case with the children.

Defendant also suggests that factor (j) should not favor plaintiff because she scheduled doctor appointments to occur during the day while defendant was working. But given that defendant works for most of the day, it was not unreasonable for plaintiff to schedule appointments to occur while defendant was working. Defendant admitted that plaintiff generally informs him of the children's doctor appointments and what happens at those appointments. Defendant also admitted that plaintiff facilitates a relationship between defendant and the children. Overall, the trial court's finding that factor (j) favored plaintiff was not against the great weight of the evidence.

Defendant has thus failed to establish that any of the trial court's findings on the best-interest factors of MCL 722.23 were against the great weight of the evidence. Defendant's argument focuses almost exclusively on factor (j), and he has failed to present a successful challenge to the trial court's determination that plaintiff was favored on that factor. Although the trial court indicated that the best-interest factors other than factor (j) (setting aside factor (i) for the moment) were equal, the trial court has discretion to determine how much weight to accord to the best-interest factors, *Safdar*, ___ Mich App at ___; slip op at 11. The trial court reasonably found factor (j) to merit considerable weight in these circumstances. Also, defendant's argument regarding the trial court's best-interests determination ignores the fact that the trial court considered the reasonable preferences of the children under factor (i), which could also have played a role in the trial court's overall best-interests determination. Defendant has not shown any error in the trial court's determination that plaintiff established by clear and convincing evidence that the change of domicile was in the best interests of the children.

Defendant next presents arguments concerning the first *Rains* step. He challenges the trial court's findings regarding some of the change-of-domicile factors of MCL 722.31(4) and the court's determination that plaintiff had established by a preponderance of the evidence that the factors of MCL 722.31(4) supported the motion for a change of domicile. Defendant's arguments are unconvincing.

A trial court's findings regarding the change-of-domicile factors of MCL 722.31(4) are reviewed under the 'great-weight-of-the-evidence' standard. *Rains*, 301 Mich App at 324(citations omitted). Therefore, the trial court's findings are affirmed unless the evidence clearly preponderates in the opposite direction. *Id*.

-7-

Factor (a) is "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent." MCL 722.31(4)(a). The trial court found that the larger home owned by plaintiff and Ring in Traverse City and plaintiff's increased salary in the job that she has been offered in Traverse City would create a better life for her and the children. The evidence does not clearly preponderate against the trial court's findings.

Plaintiff testified that she and Ring own a house in Traverse City that is larger than the home that plaintiff rents in Clarkston. The house in Traverse City is 3,000 square feet, with four bedrooms and three full bathrooms. The property consists of 16 acres of rolling hills. The children like to engage in outdoor sports and activities, and they would have more space to do that in Traverse City.

Plaintiff testified that she has a job offer in Traverse City that would pay her substantially more income than she makes at her job in Clarkston. She earns about $23,000 a year in her cosmetology job in Clarkston, although she made only $16,000 in 2020. She has been offered a sales job in Traverse City at which she would be able to work partially remotely with flexible hours. She would have an annual salary of $35,000 as well as commission and the use of a company vehicle. She would thus make significantly more money with that company than she currently makes. The job would allow her flexibility to take care of the children.

Plaintiff further testified that the children are very close to plaintiff's parents, who planned to move to Traverse City if the motion to change domicile was granted. The children would attend a school that was part of the Grand Traverse School District. The ratings for that school are similar to the ratings for the children's school in Clarkston. Also, the children would be able to continue their extracurricular activities in Traverse City.

Plaintiff explained that she and Ring were maintaining two households, i.e., one each in Traverse City and Clarkston, which was financially difficult because they were making mortgage payments for the home in Traverse City and rental payments for the home in Clarkston. She testified that the children have a wonderful relationship with Ring. The proposed move would allow plaintiff, Ring, and the children to bond as a family unit. Notably, Ring, who earns $84,000 a year plus bonuses, was required to live in Traverse City as part of his job. It would have been difficult for him to find another position in which he could make that amount of money.

Overall, the evidence supports the trial court's finding that the proposed move had the capacity to improve the overall quality of life for the children and plaintiff. Increased financial resources is a relevant consideration under factor (a) of MCL 722.31(4). *Yachcik v Yachcik*, 319 Mich App 24, 43-44; 900 NW2d 113 (2017). Defendant argues that earning more income is not enough by itself to establish a capacity to improve a child's overall quality of life. Defendant emphasizes that the children have always attended school in Clarkston and that they have extended family and friends in Clarkston. It is true that "living in close proximity to immediate and extended family members and remaining in a stable environment are relevant considerations with regard to MCL 722.31(4)(a)." *Id*. at 44. But as noted, there were facts other than plaintiff's increased income at the job in Traverse City indicating that the proposed move had the capacity to improve the children's overall quality of life. Plaintiff's job in Traverse City would afford her a flexible schedule so that she could care for the children. The children would have a larger home with more space outdoors to engage in sports and activities that they enjoy. The school in Traverse City was

rated similar to the school attended in Clarkston, and the children could continue their extracurricular activities in Traverse City.

As for defendant's concerns about the children being away from extended relatives, it is notable that plaintiff's parents, to whom the children were very close, planned to move to Traverse City if the motion for change of domicile was granted. In addition, defendant would continue to exercise significant parenting time under the trial court's new parenting-time schedule, and there is no reason to believe that the children would be unable to continue their relationships with extended family members in Clarkston. And the move would allow the children to live with plaintiff and Ring as an intact family unit. In sum, the trial court's findings regarding factor (a) of MCL 722.31(4) were not against the great weight of the evidence.[3]

Factor (b) is "[t]he degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule." MCL 722.31(4)(b). The trial court found that both parties had substantially complied with the parenting-time order and that plaintiff was not attempting to frustrate defendant's parenting time. Defendant does not challenge those findings.

Factor (c) is:

The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification. [MCL 722.31(4)(c).]

The trial court stated that it could modify the parenting-time schedule in a manner that preserved and fostered each party's parental relationship with the children. Further, the court was satisfied that both parties would comply with the modified parenting-time schedule.

Defendant notes that, under the existing parenting-time order, the parties shared equal parenting time. He argues that the move to Traverse City will necessitate a vast change in parenting time and in his parental relationship with the children.

When a child's domicile is changed, the new parenting-time plan is not required to be equal with the old parenting-time plan because "such equality is not possible." *McKimmy v Melling*, 291 Mich App 577, 583; 805 NW2d 615 (2011)(citation omitted). "The new [parenting-time] plan 'only need provide a realistic opportunity to preserve and foster the parental relationship

---

[3] Defendant asserts that plaintiff failed to look for higher-paying jobs in the Clarkston area. Defendant fails to cite authority establishing that such a job search is a prerequisite to a court's consideration of increased financial resources as part of the analysis under factor (a), and in any event, as noted, there were multiple grounds supporting the conclusion that the proposed move had the capacity to improve the overall quality of life for the children and plaintiff.

previously enjoyed' by the nonrelocating parent." *Id*. (citation omitted). Also, in applying factor (c), a court should consider "the use of modern technology. The separation between a parent and a child 'can be diminished by the use of modern communication technology.' " *Id*. (citations omitted).

In its new parenting-time plan, the trial court granted extensive in-person parenting time to defendant, including during weekends, summer breaks, spring breaks, and school holidays. At the March 2, 2022 hearing on defendant's motion for reconsideration, defendant's counsel agreed that there was a difference of only about 20 to 30 days a year between defendant's parenting time under the existing schedule and his parenting time under the new schedule. The trial court ordered that defendant was to have regular telephonic and electronic contact with the children, including through Facetime, Skype, text messaging, and Google Duo. And given that the parties have a history of complying with the existing parenting-time order, there was no reason to doubt that the parties would comply with the new parenting-time plan. Overall, the trial court's finding on factor (c) was not against the great weight of the evidence.

Factor (d) is "[t]he extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation." MCL 722.31(4)(d). The trial court noted that there was no indication that defendant was opposing the proposed move out of a desire to secure a financial advantage. Factor (e) concerns domestic violence. MCL 722.31(4)(e). The trial court stated that factor (e) was inapplicable because there was no testimony indicating domestic violence. Defendant does not challenge the trial court's determinations regarding factors (d) and (e).

In sum, defendant's arguments on this issue are unavailing. None of the trial court's findings regarding the change-of-domicile factors of MCL 722.31(4) were against the great weight of the evidence. The evidence supported the trial court's findings on the factors at issue on appeal. In particular, the evidence supported the trial court's finding on factor (a) that the change of domicile had the capacity to improve the quality of life for the children and plaintiff, and the evidence supported the trial court's finding on factor (c) that it was possible to modify the parenting-time schedule in a manner that preserved and fostered each party's parental relationship with the children. Defendant has failed to establish any error in the trial court's determination that plaintiff established by a preponderance of the evidence that the factors of MCL 722.31(4) supported the motion for a change of domicile. The trial court did not abuse its discretion in granting the motion for a change of domicile.

Defendant's final argument on appeal is that the trial court erred in denying his motion for a directed verdict or involuntary dismissal. We disagree.

Initially, we note that defendant below referred to his motion as being for a directed verdict, but on appeal he relies on the involuntary-dismissal provision of MCR 2.504(B)(2). Nonetheless, he makes the same basic argument on appeal that he asserted below, i.e., that plaintiff had failed to present sufficient evidence as of the close of her proofs. The motion for directed verdict may be treated as a motion for involuntary dismissal under MCR 2.504(B)(2). See *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 235 n 2; 615 NW2d 241 (2000) (noting that a purported motion for a directed verdict at a bench trial would more accurately be described as a motion for involuntary dismissal under MCR 2.504(B)(2)); See, also, *Samuel D Begola Servs, Inc v Wild*

*Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995) (treating a motion for a directed verdict as a motion for involuntary dismissal under MCR 2.504(B)(2)). Therefore, we will refer to the motion at issue as a motion for involuntary dismissal rather than a motion for a directed verdict.

In reviewing a decision on a motion for involuntary dismissal under MCR 2.504(B)(2), this Court reviews issues of law de novo and reviews factual findings for clear error. *Sands Appliance Servs*, 463 Mich at 238. A finding of fact is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *Samuel D Begola Servs*, 210 Mich App at 639.

MCR 2.504(B)(2) provides:

In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.

Unlike a motion for directed verdict in a jury trial, a motion for involuntary dismissal requires a court to exercise its " 'function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences.' " *Williamstown Twp v Hudson*, 311 Mich App 276, 287; 874 NW2d 419 (2015) (citation omitted).

In arguing that the trial court should have granted his request for an involuntary dismissal, defendant essentially repeats the arguments he asserted earlier in his brief on appeal, i.e., that plaintiff did not present sufficient evidence in support of the change-of-domicile factors of MCL 722.31(4) and did not show by clear and convincing evidence that it was in the best interests of the children to change domicile. Defendant also notes that his testimony at the March 2, 2022 hearing on his motion for reconsideration occurred after the close of plaintiff's proofs.

Defendant's argument is unavailing. As explained earlier, the evidence supported the trial court's determinations regarding the change-of-domicile factors of MCL 722.31(4) and regarding the best interests of the children. The vast majority of the testimony presented at the evidentiary hearing, including the testimony of plaintiff and Ring as well as some of the testimony of defendant, occurred before the close of plaintiff's proofs, which was on the third day of the three-day evidentiary hearing. The only testimony presented by defendant after the close of plaintiff's proofs was a small amount of additional testimony of defendant. Defendant fails to provide an adequate argument focused on why the evidence presented before the close of plaintiff's proofs was insufficient without the additional testimony of defendant presented after the close of plaintiff's proofs. Defendant "cannot leave it to this Court to make his arguments for him. His failure to adequately brief the issue constitutes abandonment." *Seifeddine*, 327 Mich App at 521 (citation omitted).

Defendant refers to his testimony at the March 2, 2022 hearing regarding some of his communications with the children about the case. That testimony was provided after the close of plaintiff's proofs and was thus not before the court when it ruled on defendant's motion for involuntary dismissal. But defendant fails to explain how plaintiff's proofs were inadequate without that testimony. Some testimony about certain of defendant's improper communications with the children had already been provided before the close of plaintiff's proofs. Defendant has failed to show that his testimony at the March 2, 2022 hearing was so critical that an involuntary dismissal was required in the absence of that testimony.

Affirmed.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel